UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TONYA AUBERT,
*f.k.a.* Tonya Mallett-Rathell,

Case No. 2:15-cv-10703

Plaintiff,                                    Magistrate Judge Anthony P. Patti

v.

RUSSELL COLLECTION
AGENCY, INC.,

Defendant.
_____/

**OPINION AND ORDER DENYING PLAINTIFF'S FED. R. CIV. P. 60(b)(6) MOTION FOR RECONSIDERATION (DE 23)**

## I.      OPINION

### A.      The Court's Opinion, Order and Judgment

This case is brought pursuant to the Fair Credit Reporting Act ("FCRA").
The parties to this case – Plaintiff on her own behalf and Defendant via counsel -
appeared for trial on August 19, 2016.  Plaintiff's proofs consisted of her testimony
and the admission of Exhibits (A)-(E).[1]

At the close of Plaintiff's proofs, Defendant made an oral motion under Fed.
R. Civ. P. 52(c) for judgment on partial findings.  The Court granted this motion
and stated its findings, legal authority and reasoning from the bench.  As reflected

_____

[1] Plaintiff withdrew her requests to admit Exhibit F and Exhibit G.

in its bench ruling and the written opinion which followed, the Court's findings and conclusions mandated that Defendant's Rule 52(c) motion be granted, because: (1) There is no private cause of action under 15 U.S.C. § 1681s-2(a) ("Duty of furnishers of information to provide accurate information"); and (2) Although the Sixth Circuit has recognized a private cause of action under 15 U.S.C. § 1681s-2(b) ("Duties of furnishers of information upon notice of dispute"), Plaintiff did not actually plead for relief under this statutory section, and in any case, failed to establish a violation of the same. (DE 21.)   Along with this opinion and order, the Court entered judgment in favor of Defendant and against Plaintiff. (DE 22.)

### B.    Plaintiff's Fed. R. Civ. P. 60(b) Motion

Currently before the Court is Plaintiff's August 24, 2016 motion (DE 23) for reconsideration of this Court's August 19, 2016 ruling, August 23, 2016 opinion and order (DE 21) and August 23, 2016 judgment (DE 22).  Plaintiff brings her motion pursuant to Fed. R. Civ. P. 60, which governs requests for relief from a judgment or order.  As to the grounds for such a motion, the rule provides:  "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

**(1)**    mistake, inadvertence, surprise, or excusable neglect;

**(2)**    newly discovered evidence that, with reasonable diligence,
        could not have been discovered in time to move for a new trial
        under Rule 59(b);

2

**(3)**      fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

**(4)**      the judgment is void;

**(5)**      the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

**(6)**      any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

In the instant motion, Plaintiff specifically seeks relief under Subsection (b)(6), which "permits courts to grant relief from judgment for 'any other reason that justifies relief.'" *Taylor v. Streicher*, 469 F. App'x 467, 468 (6th Cir. 2012). As to this subsection, the Sixth Circuit has observed: "We have held that Rule 60(b)(6) should apply "only in *exceptional or extraordinary circumstances* which are not addressed by the first five numbered clauses of the Rule.'" *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990) (quoting *Hopper v. Euclid Manor Nursing Home, Inc.,* 867 F.2d 291, 294 (6th Cir.1989) (emphasis added). "Courts, however, must apply subsection (b)(6) only 'as a means to achieve substantial justice when 'something more' than one of the grounds contained in Rule 60(b)'s first five clauses is present.'" *Olle*, 910 F.2d at 365 (quoting *Hopper,* 867 F.2d at 294).[2]

---

[2] *See also That's Entm't, Inc. v. Club Images, Inc.*, 178 F.R.D. 143, 145 (E.D. Mich. 1997) (Gadola, J., denying defendant's motion to set aside default judgment)

### C.     Discussion of Plaintiff's Arguments

At the outset of her motion, Plaintiff claims that this Court "failed to recognize the relevance of verification in conducting a reasonable investigation pursuant to FCRA[,]" and "increased the plaintiff's burden of proof beyond that of the relevant substantive law concerning FCRA."  (DE 23 at 1.)  Although these appear to be Plaintiff's two overriding arguments, this opinion is framed consistent with the five arguments listed in the table of contents and argument sections of Plaintiff's brief.  (DE 23 at 2, 4-8.)

### 1.     Whether verification is a requisite function in conducting a reasonable investigation?

Answering this question in the affirmative, Plaintiff cites a Senate Report, which provides:

> Currently, the FCRA does not apply to those entities that furnish information to consumer reporting agencies.  The Committee believes that this *gap in the FCRA's coverage* weakens the accuracy of the consumer reporting system.  The consumer reporting agencies may dutifully respond to inquiries from consumers and attempt to verify disputed information by contacting the furnisher.  If the furnisher of the information acts irresponsibly in verifying the information however, inaccurate information may remain on the report and the consumer is left with little or no recourse.

---

("Defendant [moving party] has a *high burden* to meet in order to obtain relief under Rule 60(b)(6) . . . .") (emphasis added); *CJPS Healthcare Supplies & Equip. v. Ansar Med. Techs., Inc.*, No. 12-CV-14885, 2014 WL 3708612, at *8 (E.D. Mich. July 28, 2014) (Goldsmith, J., denying motion to set aside the dismissal order and enforce or set aside the settlement agreement) ("The Court concludes that under the *heavy burden* of Rule 60(b)(6), Plaintiff has not shown an entitlement to relief from the dismissal order.") (emphasis added).

4

S. REP. 103-209, 6 (Dec. 9, 1993) (emphasis added). It is Plaintiff's position that

*verification* "is a crucial function in conducting a *reasonable investigation*

pursuant to FCRA[,]" presumably referring to the furnisher's (Defendant's) duties

under Subsection 1681s-2(b)(1)(A), and "in no way invokes 15 USC § 1692g . . .

of the Fair Debt Collection Practices Act (FDCPA)."  Here, Plaintiff explains that

she refers to "verification" to the extent that "Congress intended to provide [a]

private remedy against furnishers that perform 'irresponsible verifications'

pursuant to FCRA."  (DE 23 at 4) (emphasis added).  Nonetheless, whatever is

stated in this Senate Report, the Court's rulings are guided by the terms of the

statute itself - 15 U.S.C. § 1681s-2 ("Responsibilities of furnishers of information

to consumer reporting agencies") – under which Plaintiff admits to bringing her

lawsuit (*see* DE 1 at 5-7, DE 19 at 5).  As the Supreme Court has "'stated time and

again… courts must presume that a legislature says in a statute what it means and

means in a statute what it says there.'" *Arlington Cent. School Dist. Bd. of Ed. v.*

*Murphy*, 548 U.S. 291, 296 (2006) (citing *Connecticut Nat. Bank v. Germain*, 503

U.S. 249, 253-254 (1992)). "When the statutory 'language is plain, the sole

function of the courts – at least where the disposition required by the text is not

absurd – is to enforce it according to its terms.'"  *Id*. (citing *Hartford Underwriters*

*Ins. Co. v. Union Planters Bank, N. A.*, 530 U.S. 1, 6 (2000) (internal quotation

marks and external citations omitted)).  Here, the statutory language is clear and

will be given its plain meaning; there is no need to resort to congressional reports to discover its intent.[3]

In a sense, Plaintiff argues that "verification" is some type of required link in the chain of conducting a "reasonable investigation." This argument is problematic. First, Plaintiff provides no citation for her assertion. (*See* DE 23 at 4.) Second, "*investigation*" under 15 U.S.C. § 1681s-2(b) of the FCRA is distinct from "*verification*" under 15 U.S.C. § 1692g of the FDCPA. Under the FCRA, "the investigation an information furnisher undertakes must be a reasonable one[,]" and "the term 'investigation' itself denotes a 'fairly searching inquiry,' or at least something more than a merely cursory review." *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 616 (6th Cir. 2012). Moreover, Section 1681s-2(b) uses the term "investigation," and its only use of the word "verified" appears in Subsection

---

[3] As no less a legal scholar than Justice Holmes once pointed out, "'We do not inquire what the legislature meant; we only ask what the statute means.'" *Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U.S. 384, 397 (1951) (Jackson, J., concurring) (quoting Holmes, C*ollected Legal Papers*, 207 (1920)). *Cf. Magor & St. Mellon's Rural Dist. Council v. Newport Corp.*, [1952] A. C. 189, 191 (H. L.) (per Lord Simonds) ("The duty of the court is to interpret the words that the legislature has used; those words may be ambiguous, but, even if they are, the power and duty of the courts to travel outside them on a voyage of discovery are strictly limited."). As the late Justice Scalia noted, in particularly memorable fashion, "I have often criticized the Court's use of legislative history because it lends itself to a kind of ventriloquism. The Congressional Record or committee reports are used to make words appear to come from Congress's mouth which were spoken or written by others (individual Members of Congress, congressional aids, or even enterprising lobbyists)." *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 73-74 (2004) (Scalia, J., dissenting).

1681s-2(b)(1)(E) – a duty not reached until *after* a Subsection 1681s-2(b)(1)(A) *re*investigation. On the other hand, under the FDCPA's provision regarding disputed debts:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains *verification* of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such *verification* or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

15 U.S.C. § 1692g(b) (emphases added).

As at least one court has explained this crucial distinction: "[A] debt collector's obligation under the FCRA to verify a debt after receiving notice of a dispute from a credit reporting agency ("CRA") is distinct from a debt collector's obligation under the FDCPA to verify a debt (or cease collection efforts) after receiving a dispute directly from a consumer." *Edeh v. Midland Credit Mgmt., Inc.*, 748 F. Supp. 2d 1030, 1038 (D. Minn. 2010), *aff'd*, 413 F. App'x 925 (8th Cir. 2011) (concerning summary judgment as to an FCRA count). Relatedly, our sister court has opined:

> The FDCPA "does not require an independent investigation of the debt referred for collection." *Id.* at 1032. "Unlike the Fair Credit Reporting Act ("FCRA"), which requires the creditor to 'conduct an investigation' upon notification of the consumer's dispute of the debt, 15 U.S.C. § 1681s–2(b)(1), the FDCPA only requires that a debt collector 'obtain [ ] verification of the debt.'" *Erickson v. Johnson,*

7

No. 05–427, 2006 WL 453201 at *6–7 (D.Minn. Feb.22, 2006).
Furthermore, the debt collector does not have a "concomitant
obligation to forward copies of bills or other detailed evidence of the
debt" to comply with the FDCPA's verification requirement.
*Chaudhry v. Gallerizzo,* 174 F.3d 394, 406 (4th Cir.1999)[.]

*Fassett v. Shermeta, Adams & Von Allmen, P.C.*, No. 1:12-CV-36, 2013 WL
2558279, at *6 (W.D. Mich. June 11, 2013) (Brenneman, M.J., regarding
verification of debt under Section 1692g of the FDCPA).

Third, a duty to investigate under 15 U.S.C. § 1681s-2(b)(1)(A) is
"triggered" by receipt of a notice under 15 U.S.C. § 1681i ("Procedure in case of
disputed accuracy"), Subsection (a)(2) ("Prompt notice of dispute to furnisher of
information.") from a CRA. *See Hawes v. Bank of Am., N.A.*, No. 13-CV-10063,
2013 WL 4053143, at *2 (E.D. Mich. Aug. 12, 2013). Plaintiff having admitted
she has no evidence of communications between the CRAs and Defendant, it is not
clear whether the September 11, 2014 letter from Defendant was "triggered" in
response to such a notice from a CRA.

In sum, Plaintiff has not shown that *verification* is a requisite function in
conducting a *reasonable investigation*, as she has not provided authority for this
proposition. Moreover, as discussed above, these are distinct obligations, under
two different statutes. The fact that this particular defendant had a duty of
verification under a statute not pleaded in this lawsuit is of no event here. Even
assuming, as Plaintiff maintained at trial, that "verification" is a "lower level of

8

inquiry" than an "investigation," and even without taking into consideration

Defendant's apparent position that it did not have a duty to comply with *Plaintiff's*

demand for verification, Plaintiff's August 19, 2016 testimony and Exhibits (A)-

(E) do not meet her burden to show that Defendant Russell Collection Agency

failed to perform a reasonable investigation in response to a Section 1681i(a)(2)

notice from any *of the CRAs*.[4]

> **2.    Whether Exhibit E is relevant, sufficient, & credible evidence to support Plaintiff's claim that Defendant failed to conduct a reasonable investigation?**

Before addressing this question, a review of the timeline evidenced by

Plaintiff's exhibits, each of which was attached to her trial brief (DE 19), is in

order:

- an apparent **December 4, 2013** letter from Defendant to Plaintiff, stated, in part:  "If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion of it, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or ver[i]fication."  (Exhibit D)

---

[4] As the Court's order acknowledged (DE 21 at 4 n.3), Plaintiff relied upon Ex. E to essentially "infer" that Defendant did not perform a "higher level of investigation."  I did not find this to be a reasonable inference on the face of the document itself.  Instead, I noted that the phrase "regarding your demand for verification" and similar verbiage noted on the record clearly invoked 15 U.S.C. § 1692g ("Validation of debts") of the Fair Debt Collection Practices Act (FDCPA), a statute which, I repeat, is not at issue in this lawsuit.  *See* 15 U.S.C. §§ 1692-1692p.  Notably, the exhibit refers to "your demand," consistent with an FDCPA obligation, not "notice from the CRA," as would be consistent with an FCRA obligation.

- an apparent **August 21, 2014** email from Plaintiff to Defendant purported to provide proof of payment (Exhibit A) and was purportedly accompanied by an apparent July 10, 2013 statement from Southfield Radiology (Exhibit B) and an apparent screen print of payments to Southfield Radiology from a Health Savings Account (HSA) (Exhibit C)

- an apparent **September 11, 2014** letter from Defendant to Plaintiff, provides, in part:  "Our office is in receipt of *your letter* of dispute and *request for verification*.  Regarding your demand for *verification*, including original signed contracts, copies of state licenses, agreements, etc., there is no basis in law to substantiate your right *to such information*. Court cases and the Federal Trade Commission have found there is no duty to comply."  This letter also states, "[h]owever, in *an effort to provide verification*, we have summarized the charges below.  .  . ."  (Exhibit E) (emphases added).

(*See* DE 19-2 at 2, 4, 6, 8, 10.)

Plaintiff claims that "an effort to provide verification," as mentioned in the September 11, 2014 response, "is clearly not the requisite verification that Congress intended."  (DE 23 at 4.)  Plaintiff notes that "§ 1681s–2(b)(1) requires creditors, after receiving notice of a consumer dispute *from a credit reporting agency*, to conduct a *reasonable investigation* of their records to determine whether the disputed information can be verified."  *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004) (emphasis added).  She further asserts that the adequacy of the furnisher's investigation is a question of fact for the jury. *Johnson*, 357 F.3d at 431 ("Based on this evidence, a jury could reasonably

10

conclude that MBNA acted unreasonably in failing to verify the accuracy of the information contained in the CIS.").

Nonetheless, Exhibit E does not show that Defendant failed to conduct a reasonable investigation under 15 U.S.C. § 1681s-2(b)(1)(A).  Plaintiff contends that, in response to an automated consumer dispute verification (ACDV) *from a CRA*, "a furnisher is required to verify the information in dispute through a process called verification[,]" and points to the September 11, 2014 letter from Defendant to Plaintiff (Exhibit E) as "indicating [Defendant's] resultant actions in conjunction with *her dispute* of the accuracy of information [Defendant] was reporting to Equifax."  (DE 23 at 5-6 (emphasis added).)  It is true that, "[o]nce a furnisher—in this case, Defendant—receives the ACDV forms *from a CRA*, [it is] required by the FCRA to investigate the claim and notify the CRAs of any errors in the original credit report information."  *Hawes v. Bank of Am., N.A.*, No. 13-CV-10063, 2013 WL 4053143, at *2 (E.D. Mich. Aug. 12, 2013) (emphasis added).[5]  Here, not only has Plaintiff admitted she has no evidence of communications between Defendant furnisher and any CRA, but also Exhibit E by her own explanation, appears to be

---

[5] Distinguishably, *Hawes* concerned Defendant's motion to dismiss, where "Exhibit 5 of Plaintiff's Response brief [wa]s a copy of the Automatic Consumer Dispute Verification (ACDV) forms sent to Defendant by TransUnion and Experian, which *triggered* Defendant's reinvestigation and reporting obligations under the FCRA."  *Hawes*, 2013 WL 4053143, at *4 (emphasis added).

11

Defendant furnisher's response to *her request*, not Defendant's furnisher's response to an ACDV from a CRA.

Thus, even if, as Plaintiff argues, the September 11, 2014 letter (Exhibit E) documents Defendant furnisher's position that "it had no duty to comply with her demand for verification[,]" (*see* DE 23 at 6), and, even if the inaccuracy continued to be reported by Experian until October 2014 and by Equifax until June 25, 2016, the letter (Exhibit E) does not show that Defendant furnisher failed to conduct a reasonable investigation under 15 U.S.C. § 1681s-2(b)(1)(A) in response to a 1681i(a)(2) notice from any of the CRAs.  And, even if Plaintiff had established that Defendant received a 15 U.S.C. § 1681i(a)(2) notice in August 2014, she would still need to establish what Defendant did or did not do, as required by 15 U.S.C. § 1681s-2(b)(1)(A)-(E).  Moreover, even if, *arguendo*, Exhibit E related to duties arising under the FCRA, Plaintiff's contention that the words "in an effort to provide verification" somehow equate with an admission that a "reasonable investigation" was not done is not well taken.  In context, these words connote action, not inaction, and do not tend to prove that Defendant failed to fulfill its duty to provide the "requisite verification that Congress intended." (DE 23 at 4.)  In fact, whether accurate or not (which the Court cannot determine on the limited evidence placed before it), it suggests that Defendant furnisher did some type of

12

verification, notwithstanding the fact that it did not believe it was required to do so under the law.

### 3. Whether Plaintiff admitted evidence sufficient to meet her burden of proof that Defendant failed to conduct a reasonable investigation?

As the Court acknowledged in its opinion and order, "[t]he burden of proof on a claim under the Fair Credit Reporting Act (FCRA) is on the plaintiff . . . ." 21 C.J.S. Credit Reporting Agencies § 26.  On this issue, Plaintiff points to a decision which held that Plaintiffs suing furnishers under Section 1681s-2(b) must "demonstrate some causal relationship between the . . . allegedly unreasonable reinvestigation and the failure to discover inaccuracies in his account." *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 37 (1st Cir. 2010).  (*See* DE 23 at 6.)  Plaintiff argues that she demonstrated a causal connection "implicitly" when she testified that "despite the account being paid in full by August 14, 2014, Defendant still continued to report the account as unpaid until October 2014 to Experian and until June 25, 2016 to Equifax."  (DE 23 at 6.)  However, Plaintiff's assertions that "if the account was properly verified through the formal verification process it would have been updated accurately as of August 14, 2014[,]" and "had a reasonable investigation been conducted the information contained in Exhibit E would be markedly different" (*see* DE 23 at 6-7), do not constitute evidence in support of her burden of proof.

As noted in the Court's order, Plaintiff's testimony represented that she only knows the end conclusion, not what actually occurred or got communicated between Defendant and its upstream client (Southfield Radiology) or between Defendant and the downstream CRAs. (DE 21 at 5.) Some deposition testimony obtained from any of the entities within the chain of communications, or some documentation of the communications between them – obtained through well-targeted discovery – might have provided the Court with evidence as to: what investigation was undertaken by Defendant furnisher, if any (*see* 15 U.S.C. § 1681s-2(b)(1)(A)); whether and when Defendant furnisher reported the debts as satisfied (*see* 15 U.S.C. § 1681s-2(b)(1)(C)); and why the CRAs (TransUnion, Equifax or Experian) respectively cleared their credit reports when they did. But no such evidence was presented to this Court, despite Plaintiff having been given ample time to conduct discovery, and Plaintiff's speculation about the reasonableness of Defendant's investigation is not evidence of the same. (DE 7.) As one leading commentator appropriately warns:

> [W]hether the CRA or the furnisher (or both) is ultimately responsible for the failure to properly investigate the consumer's dispute is virtually impossible to know prior to formal discovery. Accordingly, the consumer is well advised to join claims against both the furnisher and the CRA when suing either for breaching its investigation duties.

*Fair Credit Reporting* (8th ed. 2013), National Consumer Law Center, at 271. The Court again notes that the CRAs could have been, but were not, joined as parties to

14

this litigation.[6]  Had they been so, and had even limited discovery from them been

obtained, they might have shed light upon why they continued to report the debts

as they did, what was communicated between them and Defendant, and perhaps

revealed what information Defendant had in its possession and what efforts it made

to investigate; however, none of that occurred here.[7]

> **4.     Whether sufficient, credible evidence was provided to**
> **support Plaintiff's claim that Defendant violated her rights**
> **under the FCRA based upon the allegation that her Equifax**
> **credit file was not updated until June 25, 2016?**

Furnishers have certain duties under 15 U.S.C. § 1681s-2(b)(1).  One such

duty provides as follows:

> [I]f an item of information disputed by a consumer is found to be
> inaccurate or incomplete or cannot be verified after any
> reinvestigation under paragraph (1), for purposes of reporting to a
> consumer reporting agency only, as appropriate, based on the results
> of the reinvestigation promptly—
>
> **(i)**     modify that item of information;
>
> **(ii)**    delete that item of information; or

---

[6] In fact, the Court's June 21, 2016 order following the final pretrial conference directed the parties to conduct a settlement conference, further suggesting that "[b]ased upon the representation that non-party Equifax's presence would be useful to such a discussion, it should be invited, but may not be required, to attend."  (DE 12 at 2.)

[7] In contrast, *see Smith v. LexisNexus Screening Solutions*, Inc., Nos. 15-2329/2330, 2016 WL 4761325 (6th Cir. Sept. 13, 2016), where the court had evidence as to what was in the CRA's possession.  Id. at *7 ("Lexis had within its possession a credit report from Equifax….").

**(iii)**    permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1)(E).

Citing 15 U.S.C. § 1681b-2(b)(1)(E), Plaintiff speculates that Defendant

knew Plaintiff's account was paid in October 2014, refers to her testimony that

"[D]efendant did not update her Equifax credit file until June 25, 2016 . . ." and

claims these two points "clearly support[] plaintiff's claim that the defendant

violated her FCRA rights pursuant to § 1681s-2(b)[(1)(E)]."  (DE 23 at 7.)

However, it must be noted that Defendant furnisher is not the downstream

CRA which generates the actual credit reports; rather, Defendant Russell

Collection Agency is the midstream entity which investigates and gathers its

information from the upstream client, in this case creditor Southfield Radiology,

and communicates it to the CRAs. As the Court's order stated:  "it is entirely

possible that non-party CRAs may have reported inaccurately, for reasons which

have not been demonstrated by Plaintiff's trial proofs.  For example, I note

Plaintiff's testi[fied] or argu[ed] that the account was paid in full as of August 13,

2014, but was still reported delinquent by Experian until October 2014 and by

Equifax until June 25, 2016.  Why it was reported as owing by one CRA and not

by the other remains a mystery, although Experian's corrected reporting as early as

October 2014 leads to an inference that Defendant did, in fact, report the debt as

paid in full to one or more of the CRAs at least by then, if not earlier."  (DE 21 at 5

16

n.4.)  Furthermore, the allegation that two of the CRAs (Experian and Equifax)

reported the accounts differently, for a significant period of time, strongly suggests

fault on their part, or at least on the part of Equifax.  Again, Plaintiff has not put

forth evidence establishing any communications between Defendant furnisher and

any of the CRAs.  Therefore, she has not demonstrated that Defendant furnisher

failed to update her Equifax credit file until June 25, 2016 or that it was otherwise

untimely in fulfilling its responsibilities.

> **5.** **Whether Defendant willfully failed to comply with the FCRA requirement to conduct a reasonable investigation by deciding to merely make an "effort toward verification" instead of performing verification in conjunction with a reasonable investigation?**

15 U.S.C. § 1681n concerns civil liability for willful noncompliance and sets

forth potential liability to a consumer for "[a]ny person who willfully fails to

comply with any requirement imposed under this subchapter with respect to any

consumer . . . ."  15 U.S.C. § 1681n(a).  As Plaintiff points out, "[t]he standard

civil usage . . . counsels reading the phrase 'willfully fails to comply' in § 1681n(a)

as reaching reckless FCRA violations . . . ."  *Safeco Ins. Co. of Am. v. Burr*, 551

U.S. 47, 57 (2007) (external footnote omitted).

Plaintiff contends that, "[b]y failing to perform verification in conjunction

with a reasonable investigation, defendant caused an unjustifiably high risk of

violating plaintiff's rights under the FCRA."  (DE 23 at 8.)  However, the Court

having determined that Plaintiff has not met her burden of proof as to a violation of

15 U.S.C. § 1681s-2(b)(1)(A), it need not address the issue of liability in

conjunction therewith.  Having failed to provide proof that Defendant abrogated its

duty to conduct a reasonable investigation, it goes without saying that Plaintiff

likewise failed to meet the higher threshold of proving a "willful" failure in the

same regard.[8]  The Court further notes that causing "an unjustifiably *high risk* of

violating plaintiff's rights under the FCRA[,]" (*see* DE 23 at 8) (emphasis added),

is not to be equated with causing an actual injury.[9]

### D.   Conclusion

---

[8] As the Sixth Circuit recently observed, even where a jury could find negligence, "that is a far cry from being willful.  In order to willfully violate the FCRA, [the defendant's] action must entail 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'"  *Smith,* 2016 WL 4761325, at *7 (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68 (2007) (internal quotation marks and citation omitted).

[9] The trial record is likewise devoid of any sworn explanation as to whether or how the alleged inaccuracies in Plaintiff's credit reports – which were also never received in evidence – caused her to suffer any negative consequences, such as an inability to obtain credit, to be approved for a mortgage, etc. *See* 15 U.S.C. § 1681o ("Civil liability for negligent noncompliance"); *Kaplan v. Experian, Inc.*, *et al.*, 2010 WL 2163824, *6-*7 (E.D. Mich. May 26, 2010) (granting summary judgment to defendant on plaintiff's claim of negligent noncompliance where plaintiff could not establish that he incurred actual damages arising from defendant's "one-day delay in providing its reinvestigation report to Plaintiff."); *Castleberry v. Daimler Chrysler Truck Financial*, No. 10-11460, 2012 WL 3113205, *4-*6 (E.D. Mich. July 31, 2012) (granting summary judgment in defendant's favor as to plaintiff's § 1681s-2(b) claim where Plaintiff "provided no evidence to support a claim for actual damages.").

18

As the Court's conclusions regarding the foregoing five points indicate,
Plaintiff has failed to support her contentions that this Court "failed to recognize
the relevance of verification in conducting a reasonable investigation pursuant to
FCRA[,]" or "increased the plaintiff's burden of proof beyond that of the relevant
substantive law concerning FCRA."  (DE 23 at 1.)  Instead, she simply disagrees
with this Court's findings and conclusions – namely, that Plaintiff failed to
establish a violation of 15 U.S.C. § 1681s-2(b)(1) on the trial proofs that she
submitted to the Court (DE 21 at 4) - whether indicated on the record on August
19, 2016 or in the Court's August 23, 2016 opinion and order.   What the Court
stated at that time warrants repetition here:

> In the light most favorable to her, Plaintiff's very limited proofs have,
> at best, demonstrated only that she gave notice to Defendant in August
> 2014 that she disputed the accounts at issue and had paid the debts
> reflected thereby; however, these proofs tell the Court nothing about
> what Defendant did or did not do with that information, and, if the
> information was conveyed to anyone, when this occurred.  Nor do
> these limited proofs explain why non-party Credit Reporting Agencies
> (CRAs) continued to report delinquencies for varying lengths of time.

(DE 21 at 4.)[10]  In other words, Plaintiff essentially asks this Court to "connect the
dots" in order to satisfy her burden of proof.  Unfortunately, she has failed to

---

[10] It should be borne in mind that the Court was "not required to draw any special
inferences in favor of the nonmoving party" in deciding a Rule 52 motion for
judgment on partial findings.  9 *Moore's Federal Practice*, § 52.51 (Matthew
Bender 3d Ed.); *see also Ritchie v. United States, et al.*, 451 F.3d 1019, 1023 (9th
Cir. 2006) (district court in bench trial not required to draw inferences in
nonmoving party's favor and may make findings in accordance with its own view

present to the Court those "dots" which would be necessary or sufficient to draw the requested connections. Without them, no picture of statutory liability emerges, even in abstract form. Therefore, Plaintiff has not shown the "exceptional or extraordinary circumstances" required for relief under Fed. R. Civ. P. 60(b)(6), *see, Olle*, 910 F.2d at 365, nor has she shown any palpable defect warranting correction under E.D. Mich. LR 7.1(h) ("Motions for Rehearing or Reconsideration.").

## II.   ORDER

For the foregoing reasons, Plaintiff's motion under Fed. R. Civ. P. 60(b)(6) for reconsideration of this Court's August 19, 2016 oral ruling, or the subsequent opinion and order (DE 21) or judgment (DE 22) is **DENIED**.

**IT IS SO ORDERED**.

**Dated**: September 29, 2016          s/Anthony P. Patti
                                       ANTHONY P. PATTI
                                       UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on September 29, 2016, electronically and/or by U.S. Mail.

                                       s/Michael Williams
                                       Case Manager for the
                                       Honorable Anthony P. Patti

---

of the evidence). Moreover, the court is not required to deny the motion even if the evidence, in the light most favorable to the plaintiff, makes a prima facie case. *See Emerson Electric Co. v. Farmer*, 427 F.2d 1082, 1086 n.9 (5th Cir. 1970) (internal citation omitted) (interpreting former version of Rule 41, governing dismissal at trial).